In the

# United States Court of Appeals
## For the Seventh Circuit

No. 04-1961

THOMAS POWERS,

*Plaintiff-Appellant*,

*v.*

DONALD SNYDER, *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Central District of Illinois.
No. 02-1372—**Harold A. Baker**, *Judge*.

SUBMITTED APRIL 4, 2007—DECIDED MAY 3, 2007

Before POSNER, WOOD, and WILLIAMS, *Circuit Judges*.

POSNER, *Circuit Judge*. The district judge dismissed this prisoner's civil rights suit (42 U.S.C. § 1983) for failure to state a claim. Except with respect to the following rulings, we agree with the district judge's reasoning and conclusions.

Concerning the plaintiff's claim that he was "forc[ed] to work in inhumane condition[s] by [being forced] to have hepatitis shots; knowing and exposing the plaintiff to conditions where [the warden] knows hepatitis exists," the district judge said only that "the plaintiff's allegations do

not rise to a constitutional violation." The problem with the plaintiff's claim is not that knowingly exposing a prisoner to hepatitis or other serious diseases could not amount to cruel and unusual punishment in violation of the federal Constitution; it could. *Barnes v. Briley*, 420 F.3d 673, 675 (7th Cir. 2005); *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997); *Billman v. Indiana Department of Corrections*, 56 F.3d 785, 788-89 (7th Cir. 1995); *Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006). The problem is that the Constitution is not violated by a prison's forcing a prisoner who is assigned to work in an unhealthy environment to be inoculated against the microbes that make it unhealthy. The prison must be allowed to choose between removing the prisoner from the unhealthy environment and protecting him from its consequences. *Robbins v. Clarke*, 946 F.2d 1331, 1333 (8th Cir. 1991) ("although Kitt alleges that he comes into contact with infected prisoners through his work as a prison barber, he neither claims that he is denied any safeguards that barbers regularly employ, nor does he claim that his exposure to infectious and contagious disease is more substantial than the exposure of barbers (or anyone else) to infectious and contagious diseases outside the prison setting"); *Forbes v. Edgar*, *supra*, 112 F.3d at 266-67; *Shannon v. Graves*, 257 F.3d 1164, 1168 (10th Cir. 2001); *Good v. Olk-Long*, 71 F.3d 314, 316 (8th Cir. 1995). This is provided, of course, that the protection is efficacious. But there is no reason to doubt that it was in this case, given the plaintiff's own pleadings. Hepatitis A is the only form of hepatitis that is transmitted by means other than an exchange of blood or other bodily fluids, and two safe and effective vaccinations exist for it. Federal Bureau of Prisons, *Guidelines for the Prevention and Treatment of Viral Hepatitis* (Oct. 2005); Centers for Disease Control, *Hepatitis A Fact Sheet* (Oct. 4, 2006), www.cdc.gov/

ncidod/diseases/hepatitis/a/afact.pdf; Centers for Disease Control, *Vaccines to Prevent Hepatitis A and Hepatitis B* (Sept. 2002), www.cdc.gov/idu/hepatitis/vaccines.htm.

   More problematic is the judge's disposition of the plaintiff's claim that he has bone degeneration and arthritis in one of his hips as a result of a serious injury yet the defendants refuse to allow him a walking cane (while forcing him to work at a job that requires walking and lifting) or a lower berth in a bunk bed. The judge said that this was simply a "disagreement with a doctor's treatment decisions," which "cannot be the basis for an Eighth Amendment challenge." But as all that was before the judge when he ruled was the plaintiff's complaint plus the plaintiff's correspondence with his doctors, the ruling is defensible only if these documents establish that the plaintiff was merely disagreeing with a doctor's treatment decisions. The correspondence shows disagreement, all right, but the judge was mistaken to think that by attach-ing this correspondence the plaintiff was acknowledging a mere disagreement. A plaintiff does not, simply by attaching documents to his complaint, make them a part of the complaint and therefore a basis for finding that he has pleaded himself out of court. *Simpson v. Nickel*, 450 F.3d 303, 306 (7th Cir. 2006); *Carroll v. Yates*, 362 F.3d 984, 986 (7th Cir. 2004); *Guzell v. Hiller*, 223 F.3d 518, 519 (7th Cir. 2000); *Northern Indiana Gun & Outdoors Shows, Inc. v. City of South Bend*, 163 F.3d 449, 455 (7th Cir. 1998) ("rather than accepting every word in a unilateral writing by a defendant and attached by a plaintiff to a complaint as true, it is necessary to consider why a plaintiff attached the documents, who authored the documents, and the reliability of the documents"). The terse responses from the doctors indicating disagreement with the plaintiff's

need for a cane or a lower berth are consistent with their being willfully indifferent to his suffering. An affidavit attesting the adequacy of their response to his requests for treatment might show that there was no triable issue, but the defendants jumped the gun by moving to dismiss the complaint before any discovery.

With respect to the plaintiff's claim that at one prison he "was housed in a unit with 48 Smoke Cell[s] and 2 Non-Smoke and a day room full of smoke, [and] that [he] could not escape the tobacco smoke" and that the wardens of three other prisons where he was confined refused to create nonsmoking units or otherwise limit his exposure to smoke, the district court said—nothing. Now it is by no means certain that the plaintiff has a meritorious claim. A prison is not required to provide a completely smoke-free environment, except for prisoners who have asthma or some other serious respiratory condition that even a low level of ambient smoke would aggravate. *Alvarado v. Litscher*, 267 F.3d 648, 653 (7th Cir. 2001); *Talal v. White*, 403 F.3d 423, 427 (6th Cir. 2005); *Weaver v. Clark*, 45 F.3d 1253, 1256 (8th Cir. 1995); *Hunt v. Reynolds*, 974 F.2d 734, 736 (6th Cir. 1992). A normal prisoner must prove that he "is being exposed to *unreasonably high levels* of ETS [environmental tobacco smoke]." *Helling v. McKinney*, 509 U.S. 25, 35 (1993) (emphasis added). *Helling* does not say what level of smoke would be "unreasonably high," but notes that the plaintiff had a cellmate who smoked five packs a day. *Id*. at 28; see also *Steading v. Thompson*, 941 F.2d 498, 500 (7th Cir. 1991); *Atkinson v. Taylor*, 316 F.3d 257, 268 (3d Cir. 2003).

But although a prisoner who complains that cigarette smoking amounts to punishment because it is endangering his health must therefore show that his health is indeed

endangered, *Henderson v. Sheahan,* 196 F.3d 839, 846, 852 (7th Cir. 1999); *Oliver v. Dean*, 77 F.3d 156, 160 (7th Cir. 1996), there are other modes of inflicting cruel and unusual punishment besides ones that endanger a person's health, such as handcuffing a prisoner for hours to a hitching post, *Hope v. Pelzer*, 536 U.S. 730, 737-30 (2002), or conducting a strip search intended to humiliate the prisoner, *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003), or even denying a prisoner all opportunity to exercise. *Delaney v. DeTella*, 256 F.3d 679, 683-84 (7th Cir. 2001). "Many things—beating with a rubber truncheon, water torture, electric shock, incessant noise, reruns of 'Space 1999'—may cause agony as they occur yet leave no enduring injury. The state is not free to inflict such pains without cause just so long as it is careful to leave no marks." *Williams v. Boles*, 841 F.2d 181, 183 (7th Cir. 1988). So maybe there's a level of ambient tobacco smoke that, whether or not it creates a serious health hazard, inflicts acute discomfort amounting, especially if protracted, to punishment. Whether the plaintiff's claim rises to this level or instead amounts just to a complaint about something more akin to an annoyance than to oppression, see, e.g., *Tesch v. County of Green Lake*, 157 F.3d 465, 476 (7th Cir. 1998); *Lunsford v. Bennett,* 17 F.3d 1574, 1582 (7th Cir. 1994), is impossible to determine from the complaint. The judge should have directed the plaintiff to explain his claim in greater detail. See *Pratt v. Tarr*, 464 F.3d 730, 733 (7th Cir. 2006); *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004).

Also unclear from the complaint is whether the plaintiff is charging the defendants with deliberate indifference to his welfare in their failing to respond to his concerns about tobacco smoke. For if not—if they were merely careless in failing to correct the problem—then they cannot

be thought to have been punishing him, and so his claim, founded of course on the Eighth Amendment, would fail. *Farmer v. Brennan*, 511 U.S. 835, 835 (1994); *Scarver v. Litscher*, 434 F.3d 972, 975 (7th Cir. 2006); *Talal v. White*, *supra*, 402 F.3d at 427-28; *Atkinson v. Taylor*, *supra*, 316 F.3d at 269. But bearing in mind that he had no lawyer, we find in the complaint enough intimations of deliberate indifference to bar dismissal at this stage. The complaint alleges one warden's "deliberate intent" to deny the plaintiff a smoke-free cell despite his "mental anguish and concern for future harm"; that "Captain Dusian . . . deliberately violated the plaintiff's 8th Amendment by not giving the plaintiff his non-smoke cell for 48 days . . . . [T]he plaintiff suffered with cellmates that were heavy smokers"; and that another warden violated the plaintiff's rights by "not having a non-smoke unit, that the plaintiff has been subject to heavy smokers since his arrival . . . and still has not been put in a non-smoke cell, that [the warden is] deliberately violating the plaintiff's rights."

In a separate part of the complaint, the plaintiff alleges that the warden restricted visits from the plaintiff's wife and friend "out of abuse of power which stems from an incident in 1995 between the plaintiff and [the warden]." The incident is not specified. The allegation is unclear, to say the least, but since the plaintiff has no lawyer, the judge should have directed the plaintiff to explain the claim. Or if the judge was entitled to dismiss it—for it is even vaguer than the smoking claim—he should have done so with leave to replead, rather than dismissing it, as he did, along with the rest of the complaint, with prejudice (and adding that the suit would count as a "strike," limiting the plaintiff's right to bring subsequent suits). The plaintiff explains in his brief in this court that the claim is

retaliation—the incident that precipitated the restriction of visits to him was his filing grievances against the prison. Such retaliation violates a prisoner's right, founded on the First Amendment, to petition government for the redress of grievances. *Simpson v. Nickel*, *supra*, 450 F.3d at 305; *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006); *Boxer X v. Harris*, 437 F.3d 1107, 1112 (11th Cir. 2006); *Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000). If the plaintiff can prove it, he has a good claim. He is entitled to try to prove it.

The judgment is vacated and the matter remanded to the district court with respect to the arthritis, smoking, and retaliation claims, but is otherwise affirmed.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*